UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

MICHAEL JAY HOULE,

        Petitioner,

        Case No. 2:18-cv-46

v.

        Honorable Janet T. Neff

CONNIE HORTON,

        Respondent.
_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Michael Jay Houle is incarcerated with the Michigan Department of Corrections at the Chippewa Correctional Facility (URF) in Chippewa County, Michigan. Petitioner pleaded guilty in the Emmet County Circuit Court to conducting a criminal enterprise, second-degree home invasion, and breaking and entering. On May 26, 2015, the court sentenced Petitioner as a second habitual offender to concurrent prison terms of 15 to 30 years for conducting a criminal enterprise, 10 years to 22 years, 6 months for home invasion, and 7 to 15 years for breaking and entering.

On March 15, 2018, Petitioner timely filed his habeas corpus petition raising three grounds for relief, as follows:

    I.    Ineffective assistance of counsel—[Petitioner's] state and federal constitutional rights were violated when coerced into taking [a] plea because his attorney was not acting in [Petitioner's] best interest, failed to advise [Petitioner] that a criminal enterprise charge was not cognizable, and attorney was very ineffective.

    II.    Sentencing guidelines mis-scored—[Petitioner] is entitled to resentencing where the sentence guidelines are mis-scored in violation of state and federal due process right to sentencing based upon accurate information and

        trial defense counsel was ineffective for failing to challenge some of the scoring and [Petitioner's] sentence is unreasonable.

III.     Inaccurate statements in [Petitioner's] PSIR violate his state and federal constitutional rights—[Petitioner's] guidelines were mis-scored and sentence is unreasonable and is entitled to resentencing.

(Pet., ECF No. 1, PageID.5-8.)  Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because they are meritless.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I.    Factual allegations

Because Petitioner's criminal prosecutions were resolved by plea rather than trial, the underlying facts are not well-developed in the state court record.  The trial court, however, noted that Petitioner had engaged "in a crime spree that included an extraordinary number of crimes, and an extraordinary amount of harm to people in Emmet County[,] . . . Cheboygan County, Presque Ile County, Otsego County, Crawford County, [and] Roscommon County . . . ."  (Sentencing Tr., ECF No. 6-2, PageID.116.)  Petitioner, with accomplices including his nephew Alexander Houle, broke into homes, businesses, churches, and parks and stole personal property items.  (Emmet Cty. Cir. Ct. Docket Sheet, ECF No. 8-1, PageID.189.)  Petitioner does not deny his participation in the crimes, but he does claim that he only served as the driver and the look-out for the break-ins.[1]  (Pet'r's Aff., ECF No. 1-2, PageID.46-47.)

---

[1] Other information in the record, including a letter from Petitioner's mother relating to sentencing, reveals that Petitioner "did go in sometimes just to help Alex out."  (Nov. 27, 2015, Correspondence, ECF No. 1-2, PageID.41.)

The plea agreement called for Petitioner to enter pleas of guilty in two Emmet County Circuit Court cases: in Case No. 15004131-FC, Petitioner would enter a plea of guilty to one count of conducting a criminal enterprise, in violation of Mich. Comp. Laws § 750.159i, and one count of breaking and entering, in violation of Mich. Comp. Laws § 750.110; and, in Case No. 15004132-FH, Petitioner would enter a plea of guilty to one count of second-degree home invasion, in violation of Mich. Comp. Laws § 750.110a. (Plea Tr., ECF No. 6-1.) In exchange for Petitioner's plea, the Emmet County prosecutor would dismiss other charges in those two cases and all charges in another case. Moreover, in light of Petitioner's plea in Emmet County, the prosecutors in the other counties agreed to not file additional charges regarding the "crime spree" for the crimes committed in their counties. (*Id.*, PageID.102-103.)

The judge reviewed with Petitioner the maximum sentences for each of the charges in the plea agreement; but, there was no other mention of any sentence consideration as part of the plea. (*Id.*, PageID.97-98, 102.) When asked if there were any promises other than the ones mentioned above, Petitioner responded: "No, Your Honor." (*Id.*, PageID.99.) Petitioner also acknowledged that his plea would have the effect of giving up any claim that the plea was the result of promises or threats unless those promises or threats were mentioned in the plea hearing. (*Id.*, PageID.98) Petitioner's counsel and the prosecutor also stated that the plea terms were the terms set forth above, and that there were no other terms. (*Id.*, PageID.104-105.)

The judge sentenced Petitioner as set forth above. Petitioner has attached to his petition the sentencing information reports that were used to score the sentencing guidelines. (Sentencing Information Reports, ECF No. 1-2, PageID.19-21.)

Petitioner waited a few months, and then filed a motion to withdraw his plea based on coercion and ineffective assistance of counsel. In the alternative, Petitioner requested

3

resentencing because the court had improperly added 10 points to Petitioner's offense variable score because he functioned as a leader of the criminal enterprise. The court held a hearing on Petitioner's motion on March 8, 2016. (Mot. Hr'g Tr., ECF No. 6-3.) The court rejected all of Petitioner's challenges, concluding that Petitioner was not coerced into pleading, that his counsel was not ineffective with regard to advising Petitioner about the elements of the offense of conducting a criminal enterprise, that the scoring of 10 points for Petitioner's role as a leader was supported by the evidence, that even if the scoring changed, the minimum sentence ranges would still include the sentences imposed or, in light of the fact the court was no longer bound by the guidelines, would still be the sentence the court would impose. (*Id.*)

Petitioner, with the assistance of counsel, then filed an application for leave to appeal in the Michigan Court of Appeals raising the same issues he raises in his habeas petition. By order entered June 16, 2016, the court of appeals denied leave "for lack of merit in the grounds presented." (Mich. Ct. App. Order, ECF No. 6-4, PageID.130.) Petitioner responded by filing a pro per application for leave to appeal in the Michigan Supreme Court, again raising the same issues he raises in this action. That court denied leave by order entered April 5, 2017. (Mich. Order, ECF No. 6-5, PageID.170.) This petition followed.

## II.     AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a

decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*,

5

135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III. Knowing and voluntary plea

Petitioner claims that his plea was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). Petitioner contends his plea was unknowing because his attorney did not adequately advise him. First, Petitioner claims that counsel did not inform Petitioner that the facts did not support a conviction for conducting a criminal enterprise. Second, Petitioner claims that counsel told Petitioner that he would receive a sentence of 5 to 7 years.

The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31

(1970)).  Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it[.]" *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find a guilty plea constitutionally valid, several requirements must be met.  The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941).  The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options with the help of counsel.  *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void.").  The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving.  *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted).  Finally, the defendant must have available the advice of competent counsel.  *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970).  The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the

part of the state could be dissipated by counsel).  Ineffective assistance of counsel will render a plea of guilty involuntary.  *See Hill*, 474 U.S. at 56-57.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  The petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 571 U.S. 12, 13 (2013); *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill*, 474 U.S. at 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

### A. "Enterprise"

Petitioner's first contention—that, because of counsel's ineffective assistance, he was not aware that the underlying facts did not support conviction for conducting a criminal enterprise—relies on a faulty premise. Petitioner claims that one cannot be convicted of conducting a criminal enterprise unless the enterprise is distinct from the criminal activities in which it is engaged, i.e., there must be some separate ongoing organization with a framework or structure for making decisions, separate from the crimes. (Pet'r's Appl. for Leave to Appeal, ECF No. 6-4, PageID.142-145.)

If Petitioner had been charged and convicted of violating the federal Racketeer Influenced and Corrupt Organizations Act, his argument might have some merit. Petitioner relies principally on federal case authority as the source of the "separate and distinct from the criminal activities" requirement. (*Id.*) The Michigan Supreme Court, however, has expressly advised courts to not rely on federal authorities interpreting RICO when interpreting Michigan's criminal enterprise statute. *People v. Guerra*, 671 N.W.2d 535, 536 (Mich. 2003). Indeed, the only state authority that Petitioner cites and that might be read to support his claim is *People v. Gonzalez*,

663 N.W.2d 499 (Mich. Ct. App. 2003). The Michigan Supreme Court denied leave to appeal the *Gonzalez* decision, but it stated that the *Gonzalez* court of appeals panel's "discussion of the federal RICO statute and burdens of proof thereunder, have no relevance to [the Michigan criminal enterprise statute]." *People v. Gonzalez*, 671 N.W.2d 536 (Mich. 2003).

Moreover, *People v. Martin*, 721 N.W.2d 815, 843 (Mich. Ct. App. 2006), is cited by Petitioner, but it actually undercuts his position. In *Martin*, the Michigan Court of Appeals rejected the federal "separate and distinct from the criminal activities" requirement because it was inapplicable to the definition of enterprise under Michigan's criminal enterprise statute. Undercutting Petitioner's position even further, in *People v. Odem*, No. 302539, 2012 WL 414549 (Mich. Ct. App. Feb. 9, 2012), a case factually indistinguishable from Petitioner's, the court of appeals reasoned:

> We hold that a factual basis existed to support defendant's plea of operating a criminal enterprise. The plain terms of the statute require that defendant, who is clearly a "person," be "employed by, or associated with, an enterprise," and here there is evidence that defendant was associated with an enterprise—i.e., his friend who drove him to and from the scene of the break-ins, while committing these crimes. "Associate" means "to come together as partners, friends or companions." Webster's New Collegiate Dictionary (8th Edition, 1980). This definition recognizes that to associate means to "come together" with someone else, whether it is an individual, sole proprietorship, or other entity coming within the statutory definition of enterprise. MCL 750.159f(a). Defendant was "associated" with an enterprise because he came together with someone falling within the definition of enterprise. The trial court did not abuse its discretion in finding that a factual basis existed for defendant's plea of operating a criminal enterprise.

*Odem*, 2012 WL 414549, at *2 (footnote omitted). Thus, showing an informal association between two individuals to perpetrate break-ins is sufficient to establish an enterprise.

When Petitioner's counsel advised Petitioner regarding the plea, *Guerra*, *Martin*, and *Odem* reflected the state of the law regarding the meaning of "enterprise" under the Michigan statute. It simply cannot be said that counsel's failure to advise Petitioner of a "separate and distinct from criminal activities" enterprise requirement was professionally unreasonable, because

10

no such requirement existed. Nor can it be said that it was professionally unreasonable for counsel to advise Petitioner that an informal association between two (or more) individuals to perpetrate break-ins sufficed to establish an enterprise, because the *Odem* panel reached exactly that conclusion.

In light of the established state law regarding the meaning of "enterprise" it is not surprising that the Michigan Court of Appeals rejected Petitioner's claim as meritless. That determination is neither contrary to, nor an unreasonable application of, *Strickland*. Petitioner is not entitled to habeas relief based on this claim of ineffective assistance of counsel.

### B. 5 to 7 years

Plaintiff also contends his counsel rendered ineffective assistance when he advised Plaintiff that a plea of guilty would result in a sentence of 5 to 7 years. There is no record support for Petitioner's claim that his counsel gave that advice. Accordingly, Petitioner has failed to carry his burden with regard to this ineffective assistance claim.

Certainly, if counsel gave that advice, in light of the minimum sentence range based upon the likely scoring of the then mandatory sentencing guidelines and the statutory maximums as enhanced by Petitioner's habitual offender status, it would have been professionally unreasonable. But, even in that circumstance, Petitioner could not show any prejudice.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the

11

judgment itself. *Id.* A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings. *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Under settled Sixth Circuit authority, a petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a later assertion that he was unaware of the consequences of his plea or that there was a specific sentence agreement as part of his plea bargain. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." *Baker*, 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696-97 (5th Cir. 1976)). The Sixth Circuit, noting the obvious, observed that a trial judge cannot possibly administer a plea agreement, if it consists of "secret terms known only to the parties." *Id.* The court again addressed this issue in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also a § 2255 case. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. *Todaro*, 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his

12

statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy.

Petitioner's claims that he was unaware that he might receive a sentence of 15 to 30 years and unaware that he would receive any sentence greater than 5 to 7 years are directly contrary to his admissions during the plea hearing. The court specifically advised Petitioner that his maximum sentence for conducting a criminal enterprise would be 30 years. (Plea Tr., ECF No. 6-1, PageID.97.) The court specifically advised Petitioner that his maximum sentence for breaking and entering would be 15 years. (*Id.*, PageID.98.) The court specifically advised Petitioner that his maximum sentence for home invasion would be 22 years, 6 months. (*Id.*, PageID.102.) Additionally, Petitioner acknowledged that all promises had been disclosed in court and that his plea would foreclose a later claim that other promises had been made. (*Id.*, PageID.98-99.)

Petitioner's present contention that he was told he would receive a maximum sentence of 7 years is entirely inconsistent with his statements that he understood he would receive the maximum sentences identified above. (*Id.*, PageID.110.) And, after the trial court reviewed all of the terms of the bargain and the maximum sentences—terms that very obviously did not include a 5-year minimum or a 7-year maximum sentence—and after Petitioner acknowledged that only terms mentioned during the plea hearing would be binding—and after Petitioner, his own counsel, and the prosecutor indicated that all terms had been disclosed—Petitioner said nothing about any promise of a 5 to 7 year sentence. (*Id.*, PageID.115.) Petitioner is bound by his statements. The thorough plea colloquy forecloses his present claim.

Whether or not counsel advised Petitioner that his plea would result in a minimum sentence of 5 years and a maximum sentence of 7 years, Petitioner cannot show prejudice. The court corrected any possible misperception counsel created. If Petitioner entered that hearing believing that he would be sentenced to 5 to 7 years, the court disabused him of that belief when he told Petitioner the actual maximum sentences Petitioner would receive: 30 years; 22 years, 6 months; and 15 years. Because Petitioner cannot show prejudice, Petitioner has failed to show that the Michigan Court of Appeals' rejection of his ineffective assistance of counsel claim as meritless is contrary to, or an unreasonable application of, *Strickland*.

## II.     Offense variable 14

Petitioner next complains that offense variable 14 was mis-scored. Offense variable 14 calls for a score of 10 points if the offender was a leader in a multiple offender situation. Mich. Comp. Laws § 777.44. The scoring of offense variable 14 was not specifically discussed at the sentencing hearing; however, at the hearing on Petitioner's motion to withdraw plea, the prosecutor noted that the court sentenced all three members of the criminal enterprise and that there was testimony that Petitioner coerced his nephew, Alexander Houle (Alex), into participating. (Mot. Hr'g Tr., ECF No. 6-3, PageID.126.) Moreover, the court recalled "ample evidence" to support assessing 10 points for offense variable 14. (*Id*., PageID.126-127.)

Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief). There are circumstances that might render a guidelines scoring issue cognizable on

habeas review.  For example, a sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980), *quoted in Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. 2005); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Koras,* 123 F. App'x at 213 (quoting *United States v. Stevens,* 851 F.2d 140, 143 (6th Cir. 1988)).

Petitioner attempts to fit his claim within the boundaries of habeas cognizability by claiming that Alex's testimony regarding Petitioner's involvement was false.  Petitioner's say-so, however, is not enough to show that Alex's testimony was false.  At best, Petitioner has shown that the facts regarding his role in the enterprise were disputed—Alex said one thing and Petitioner now says something contrary.  Showing that the facts were disputed, however, is not enough. *Townsend*, 334 U.S. at 741 ("Nor do we mean that mere error in resolving a question of fact . . . would necessarily indicate a want of due process of law.").

Petitioner has failed to carry his burden to show that the testimony regarding Petitioner's leadership role was false.  Consequently, he has failed to show that the court of appeals' rejection of his scoring claim was contrary to, or an unreasonable application of, clearly established federal law.  Thus, he is not entitled to habeas relief on his scoring claim.

Even if Petitioner convincingly demonstrated that Alex's testimony was false, he would not be entitled to relief because any error was harmless.  According to *Brecht v. Abrahamson*, 507 U.S. 619 (1993), for reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it

resulted in 'actual prejudice.'" *Id*. at 637 (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)). Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict'" or, in this instance, Petitioner's sentence. *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

In Petitioner's case, the trial court noted that even if offense variable 14 were scored at 0, the court would impose the same sentence. Thus, any error here did not have a substantial or injurious effect and would be harmless. *See, e.g., Williams v. United States*, 503 U.S. 193, 203 (1992) (concluding that if district court would have imposed the same sentence had it not relied upon the invalid factor or factors, any error is harmless); *United States v. McCarty*, 628 F.3d 284, 294 (6th Cir.2010) ("[T]he district court indicated that its sentence would have been the same irrespective of the improper application of [the sentencing guidelines], and its error was thus harmless."); *United States v. Obi*, 542 F.3d 148, 156 (6th Cir.2008) (holding the district court's sentencing enhancement "harmless because the sentencing judge explicitly stated that he would impose the same sentence on alternative grounds."); *United States v. Ward*, 506 F.3d 468, 477 (6th Cir. 2007) ("[A]ny error in applying said enhancement would be a harmless error that does not require a remand because the district court would have sentenced Cook to 294 months regardless of the enhancement at issue.").

The determination that any error was harmless under *Brecht* necessarily means that it is not prejudicial under *Strickland*. *See Kyles v. Whitley*, 514 U.S. 419, 436 (1995) (explaining that the *United States v. Agurs*, 427 U.S. 97 (1976), materiality standard, later adopted as the prejudice standard for ineffective assistance of counsel claims, requires the habeas petitioner to make a greater showing of harm than is necessary to overcome the harmless error test of *Brecht*);

16

*see also Wright v. Burt*, 665 F. App'x 403, 410 (6th Cir. 2016) ("[O]ur previous analysis of *Strickland* prejudice applies to the assessment of whether the Confrontation Clause violation was harmless error under *Brecht*."); *Bell v. Hurley*, 97 F. App'x 11, 17 (6th Cir. 2004) ("Because we find the error to be harmless [under *Brecht*] Bell cannot meet the prejudice requirement of *Strickland* . . . ."); *Kelly v. McKee*, No. 16-1572, 2017 WL 2831019 at *8 (6th Cir. Jan. 24, 2017) ("Because Kelly suffered harmless error [under *Brecht*] at best, he cannot establish that he suffered prejudice [under *Strickland*]."). Accordingly, Petitioner's further claim that his counsel rendered ineffective assistance because he failed to challenge the scoring of offense variable 14 is also without merit. Thus, the state appellate court's rejection of Petitioner's claim is neither contrary to, nor an unreasonable application of, *Strickland*. Again, Petitioner is not entitled to habeas relief.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, I have examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues

17

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong. Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Dated:  November 26, 2019                      /s/ Maarten Vermaat
                                               Maarten Vermaat
                                               United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).